HENRY PEPIN ET AL. *v.* MABEL D. RYAN, EXECUTRIX
(ESTATE OF MARY LEFEBVRE)

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued April 2—decided May 15, 1946

*Samuel B. Harvey,* for the appellant (defendant).

*William P. Barber,* for the appellees (plaintiffs).

BROWN, J.   Mary Lefebvre of Putnam died on January 2, 1945, leaving an instrument dated June 15, 1944, which on January 22, 1945, was admitted to probate as her last will and testament.   From this decree the plaintiffs appealed to the Superior Court, alleging lack of testamentary capacity and undue influence by Mrs. Mabel D. Ryan, who was conservatrix of the person and property of the deceased from March 23, 1944, until her death.   The court rendered judgment sustaining the appeal and setting aside the will, and Mrs. Ryan, who was the chief beneficiary and executrix named in it, has appealed.   We refer to her as the defendant.

The testatrix, a widow without children, died at the age of seventy-eight years leaving as her only heirs-at-law and next of kin three nephews and two nieces, two of whom are the plaintiffs.   On October 14, 1943, pursuant to the application of the selectmen, the Probate Court of Putnam, on the ground of incapacity by reason of physical infirmities to manage her own affairs, appointed a conservator to take charge of her person and her property, which then amounted to approximately $3000.   The conservator resigned.   The defendant, who had first become acquainted with Mrs. Lefebvre in February, 1944, signed an application for appointment as

conservatrix in his place, and she was so appointed on March 23, 1944. From that date the testatrix boarded at the home of her nephew Henry Pepin, one of the plaintiffs, until May 30, 1944, when it became necessary for her to leave because of his inability to get sufficient help in the house. Except for this period, she lived in various institutions and private homes from the early fall of 1943 until the time of her death.

By the will in question, executed on June 15, 1944, the testatrix, who previously had executed two wills, revoked "all former wills," named the defendant executrix, and, after providing $50 for masses for the repose of her soul, left all of the rest and residue of her property to the defendant. The testatrix had possession of the will until her death. The defendant was not present when the will was made or executed but was subsequently informed of it. The defendant, who was in the insurance business in Putnam, did not visit the testatrix while she was living at Henry Pepin's, but during the spring of 1944 the testatrix went many times to her office, generally for the purpose of getting money. Between May 30 and June 15, 1944, the defendant took the testatrix in her car to purchase clothing, and on June 15, after the execution of the will, took her to a hospital, where, during the testatrix' stay of a week, she at times visited her twice a day and brought her ice cream and fruit. During the ensuing two months the defendant took her riding in her car and gave her ice cream and fruit, and between August 16, 1944, and the testatrix' death on January 2, 1945, the defendant visited her thirteen times. During her term as conservatrix the defendant disbursed a total of $919.10, which included $134.23 retained by her as her fee, plus $98.10 for expenses.

The above facts are established by the court's finding and stand unchallenged. The court concluded as follows: The nephews and nieces of the testatrix were the natural objects of her bounty; the defendant stood in a peculiar relationship of trust to the testatrix at the time the will was executed, as she was conservatrix of an elderly person who was incapable by reason of physical infirmities of managing her own affairs; and the defendant failed to sustain the burden of overcoming the resulting presumption of undue influence. It is the defendant's claim that she did fully sustain the burden of proof overcoming this presumption. This presents the question decisive of this appeal.

Ordinarily, the burden of proving undue influence rests upon him who seeks to have a will set aside on this ground, but "where the natural object of the testator's bounty is excluded from participation in his estate, where a stranger supplants children, and the will is in favor of . . . the guardian having charge of his person and estate . . . there is imposed upon the proponents of the will, upon the trial of the issue as thus raised, the obligation of disproving by a clear preponderance of evidence the affirmation of the actual exercise of undue influence by such beneficiaries of the will. *St. Leger's Appeal,* 34 Conn. 434, 450; *Dale's Appeal,* 57 id. 127, 143, 17 A. 757." *Lockwood* v. *Lockwood,* 80 Conn. 513, 522, 69 A. 8. Justification for this exception "is to be found in a rule of policy which seeks to prevent the unseemly sight of a stranger occupying such a delicate fiduciary relation, advising a testator to exclude his own family from participation in his estate for the benefit of the adviser." Ibid.; *Preston* v. *Preston,* 102 Conn. 96, 110, 128 A. 292. The practical effect of the principle is to change a

permissible inference of fact into a necessary presumption of fact. Thus the burden rested upon this defendant to prove that her influence did not overcome the free agency and independence of the testatrix, that she did not exercise such a domination or control over her mind as to constrain her to do what was against her will. *Dale's Appeal,* supra, 144. In such a case the presumption will decide the issue against such legatee unless the trier believes "that a preponderance of all the evidence (that of the plaintiff as well as that of the defendant) and the inferences drawn therefrom, show that the legacy was not obtained through undue influence." *Page* v. *Phelps,* 108 Conn. 572, 582, 143 A. 890; *Kirby's Appeal,* 91 Conn. 40, 44, 98 A. 349. ". . . the presumption is not rebutted when substantial countervailing evidence is produced but the person in whose favor it operates continues to have its benefit until the adverse party has produced evidence which, believed by the trier, affords a basis for finding the circumstances relevant to the issue of the defendant's liability." *O'Dea* v. *Amodeo,* 118 Conn. 58, 64, 170 A. 486.

The facts found by the court conclusively determine what the court believed. The solution of the issue before us, therefore, turns upon the question whether those facts so established a want of undue influence on the part of the defendant that the court could not reasonably otherwise find. All of the facts and circumstances of the case may be considered by the trier in determining whether there was undue influence. *Collins* v. *Erdmann,* 122 Conn. 626, 632, 191 A. 521. One of such facts may be an unjust or unreasonable disregard, implicit in the provisions of the will, for the natural objects of the testator's bounty. *Maroncelli* v. *Starkweather,* 104 Conn. 419,

426, 133 A. 209. In so far as motive and opportunity are concerned, the facts found in the instant case could in no event give the defendant reason to complain of the ultimate result reached by the court, for in these particulars they afford ample ground for a determination in the plaintiffs' favor. What the defendant actually did in the way of exercising undue influence upon the testatrix, looking to the gratification of her motive and pursuant to her opportunity, there are no facts sufficient to determine. Whether the defendant offered evidence of her abstention from such conduct and what she did or did not do upon the numerous occasions of opportunity which were hers the record does not show. It does make certain, however, that there was no such evidence which was believed by the court, and that therefore the court's conclusion that the defendant failed to overcome the presumption of undue influence was correct.

The judgment provides that the "appeal is sustained and the Will of said deceased is set aside." The plaintiffs do not claim, however, nor is there anything in the record to warrant, a decree that the will is invalid in so far as "item two," the bequest of $50 "to the Pastor of St. Mary's Church for masses to be said for the repose of my soul," is concerned. The memorandum of decision indicates that the trial court did not intend this item to be set aside and that the broad terms of the judgment were the result of inadvertence. While the question was not raised at the trial, justice requires that we take note of it. *Gavin* v. *Johnson*, 131 Conn. 489, 498, 41 A.2d 113. That the only other two provisions, one naming the defendant executrix and the other leaving the entire residue of the property to her, are invalid does not affect the bequest quoted. It is only those pro-

visions of the will which result from the exercise of undue influence which are void. *Harrison's Appeal,* 48 Conn. 202, 204; *Livingston's Appeal,* 63 Conn. 68, 78, 26 A. 470; 2 Page, Wills (Lifetime Ed.) § 669; 1 op. cit. § 193.

The remand of the case for the purpose of correcting this error in the judgment does not make the defendant the prevailing party who is entitled to costs under the provisions of General Statutes, § 5694; it is the plaintiffs who have prevailed upon all the issues litigated by the parties.

There is error in part, the judgment is set aside and the case is remanded with direction to enter judgment for the plaintiffs setting aside the provisions in the will except item two.

Costs in this court will be taxed in favor of the plaintiffs.

In this opinion the other judges concurred.