ADOLPH BUCCHI v. ROGER F. GLEASON, ADMINISTRATOR (ESTATE OF ALICE M. JUDD), ET AL.

SUPERIOR COURT     HARTFORD COUNTY     FILE NO. 80639

Memorandum filed October 15, 1948.

*Kirkham, Camp, Williams & Richardson,* of New Britain, for the Plaintiff.

*Leo V. Gaffney* and *A. F. Politis,* of New Britain, and *Jacob Schwolsky,* of Hartford, for the Defendants.

MELLITZ, J. The Plaintiff, Adolph Bucchi, brings this action to recover the amount of an alleged claim against the estate of Alice M. Judd, late of New Britain, and to set aside certain transfers of real and personal property made by Alice M. Judd to the defendant Theo L. Pyle. By way of cross-complaint, the defendant Stanley Goddard alleges that the transfers were the result of undue influence on the part of Mrs. Pyle and he seeks a decree nullifying the transfers, an accounting and an order requiring Mrs. Pyle to retransfer the property to the defendant Roger F. Gleason, administrator of Mrs. Judd's estate. No question is raised as to the propriety of the filing of the cross-complaint or the determination herein of the issues presented on the cross-complaint.

On August 15, 1944, the defendant Theo L. Pyle, who had been living in Tampa, Florida, came to New Britain with her husband and twelve-year-old son to make her home with her aunt, Alice M. Judd. She came at the request of Mrs. Judd, who was then ninety one years old and in need of someone to live with her to care for her and her household. Immediately upon her arrival in New Britain Mrs. Pyle took over the management of Mrs. Judd's household. On September 29, 1944, or about six weeks after Mrs. Pyle arrived, the plaintiff Bucchi, who had served Mrs. Judd and her late husband loyally for more than twenty two years as chauffeur and general handy man, was discharged. Mrs. Judd died

intestate on December 15, 1946, at the age of ninety three, leaving as the only asset of her estate five shares of stock valued at $500. The plaintiff Bucchi presented a claim for $20,000 against the estate of Mrs. Judd for services rendered to her during her lifetime for which he alleges she agreed to compensate him by her will. The claim was disallowed and the plaintiff Bucchi thereupon instituted this action.

Mrs. Pyle had been invited to come to New Britain to live with Mrs. Judd solely for the purpose of assisting in the care and management of her household, because of the necessity of replacing a housekeeper who had served Mrs. Judd for more than six years and could not continue in her service. It was not contemplated that Mrs. Pyle's activities would be concerned with Mrs. Judd's financial affairs. For many years these had been cared for by the New Britain National Bank, and from October 28, 1940, under a general power of attorney held by the bank. Nevertheless, immediately upon her arrival, Mrs. Pyle began to concern herself with Mrs. Judd's financial possessions. Mrs. Judd owned her own home valued at more than $13,000, United States government bonds of the value of $15,000, cash and bank deposits totaling over $10,000, an automobile, and household and personal effects of substantial value. In addition she was the beneficiary of an annuity under which she was entitled to receive $325 each month so long as she lived. On the morning after her arrival in New Britain, Mrs. Pyle visited the bank and discussed with its trust officer matters relating to Mrs. Judd's will. Thereafter she consulted an attorney. A new will was prepared and executed by Mrs. Judd without the knowledge or participation of the bank officials. On September 9, 1944, three weeks after Mrs. Pyle's arrival, Mrs. Judd executed a deed conveying her home to Mrs. Pyle. On September 27, 1944, Mrs. Judd cancelled the power of attorney held by the bank. On October 9, 1944, she executed a power of attorney to Mrs. Pyle, giving her general authority over Mrs. Judd's financial affairs. On the same day the bank turned over to Mrs. Judd a will and codicils, executed in 1933, 1936 and 1941, which had been in the possession of the bank, and in each of which there were bequests of substantial amounts to the plaintiff, Bucchi.

At the time of Mrs. Judd's death no will was in existence. Mrs. Pyle testified that Mrs. Judd destroyed her will on February 13, 1945, when she executed a memorandum in which

she purported to give all of her personal property to Mrs. Pyle. The bank accounts and United States government bonds owned by Mrs. Judd had previously been changed to make them payable to Mrs. Pyle and Mrs. Judd, or the survivor.

The claim of plaintiff Bucchi is that the services he rendered to Mrs. Judd were worth substantially in excess of the weekly compensation he received while he was in her employ and that she agreed to compensate him in her will for the excess. That he rendered loyal and devoted service to her during the many years he was in her employ is beyond question. He probably would have continued to serve her in the same manner during the remainder of her lifetime had he not been discharged shortly after the arrival of Mrs. Pyle. There was every reason for Mrs. Judd to acknowledge her appreciation of the plaintiff's loyalty by making generous provision for him in her will. However, it is difficult to find from the evidence that she was under a legal obligation to reward him by her will. If she saw fit to remember him in her will and codicils, as she did in the instruments which appear to have been destroyed, she did so of her own volition in generous appreciation of the manner in which he had served her over the years. The basis for a finding that she agreed to compensate him by her will is, however, lacking, and the plaintiff is, therefore, not entitled to a recovery in this action.

The defendant Stanley Goddard, nephew of Mrs. Judd and brother of the defendant Theo L. Pyle, alleges that Mrs. Pyle acquired the property of Mrs. Judd as a result of the exercise of undue influence upon Mrs. Judd. Undue influence usually is not susceptible of direct proof, and where it is found it must generally be inferred from the facts and circumstances of the case. *Collins* v. *Erdmann,* 122 Conn. 626, 632. Although it was not contemplated that Mrs. Pyle was to concern herself with other than Mrs. Judd's domestic household matters, it is of some significance that immediately after Mrs. Pyle's arrival she proceeded to concern herself with Mrs. Judd's financial affairs with the result that within one month she had title to Mrs. Judd's home and soon thereafter acquired a general power of attorney, which was followed by acts on the part of Mrs. Judd which left Mrs. Pyle owning all of Mrs. Judd's property and belongings except five shares of bank stock worth $500, as to which the certificate had been mislaid and could not be located. In spite of Mrs. Pyle's protestations that all this was

as Mrs. Judd wished it to be, the circumstances seem to compel the conclusion that undue influence ·was exercised by Mrs. Pyle to accomplish the result. Mrs. Pyle was clearly in a position to weild such influence. The age and condition of health of Mrs. Judd made her easily susceptible to such influence. It does not appear that Mrs. Judd was permitted to obtain independent advice or guidance with relation to any of her financial matters, and the wisdom of the dispositions she was making of her property after Mrs. Pyle arrived is open to serious question. There is a semblance of justification for the transfer of Mrs. Judd's home to Mrs. Pyle because at the time of the transfer Mrs. Pyle signed a memorandum in which she agreed to serve Mrs. Judd during the rest of her life, in consideration of the transfer. However, the actions of Mrs. Judd by which Mrs. Pyle ultimately came into ownership of the remainder of Mrs. Judd's property must be held to have been the result of undue influence. This conclusion appears to be warranted from all the facts and circumstances and is further fortified by the fact that after October 9, 1944, Mrs. Pyle became Mrs. Judd's business and financial adviser and as such occupied a fiduciary relation toward Mrs. Judd which required her to use her influence in the interests of Mrs. Judd and not in her own. *Gager* v. *Mathewson,* 93 Conn. 539, 544.

The issues on the complaint are found in favor of the defendants. The issue on the cross-complaint, except as to the real estate described in paragraph 3 of the cross-complaint, are found in favor of the defendant Stanley Goddard, and it is adjudged that the transfers of personal property made by Alice M. Judd during her lifetime to the defendant Theo L. Pyle are null and void, and the defendant Theo L. Pyle is ordered to retransfer said personal property to the defendant Roger F. Gleason, administrator of the estate of Alice M. Judd; and it is further adjudged and decreed that the defendant Theo L. Pyle render an accounting to the defendant Roger F. Gleason, administrator of the estate of Alice M. Judd, of all of the personal property owned and possessed by Alice M. Judd on October 9, 1944, and the funds belonging to Alice M. Judd which came under the control of the defendant Theo L. Pyle as attorney in fact of Alice M. Judd; and it is further adjudged and decreed that Henry J. Goldberg of Hartford is hereby appointed a committee to take such an account, find the facts and report make to this court.